May I please the court I'm Peter Loftus I represent the appellants. Mr. Loftus once again let me ask you a question at the beginning and see if we can get to the heart of this. Last year we held that a social worker and supervisor from the County Children and Youth Services who were responsible for removing the children from the Bayer home and put into temporary placement could rely on qualified immunity. That was I was on that panel didn't write the opinion. That was Mr. Dry and Mr. Bail. Practically the same issue arises in this case and the facts are the same. The only difference I can see is this time the stepfather of the children asserts a claim. Is that what's before us whether he has standing? That's only part of it your honor. To begin with I'd like to say I'd like to This is a situation where you and the other two judges grant a qualified immunity because you cannot change anything that has occurred in a trial at a state court level. But what we are saying here and what Judge Shaputo recognized at the lower court level is that the instances that were complaining about preceded the trial and had nothing to do with the trial and also followed the trial post trial and had nothing to do with the trial. Subsequently they should not be considered for qualified immunity. Now here we are really arguing against Greasy and Ropeson as far as their actions were concerned during this situation. Ropeson who was a police officer out of his jurisdiction had signed a blank order a protection order which was used to take the children totally against Pennsylvania law and also is without due process since it is a court order for a police officer to take the children. This was not an emergency situation where the children were in danger, were in poor health, were in a bad environment or anything of that nature. It was a situation where their biological father Mr. Zaney was coming to town to have visitation with them and there was a complaint made to Children and Youth that he was coming and had used the children. Did the district court rule on your pre-removal procedural due process claim? It did not rule specifically on it. That's the problem because in the procedural due process they could not have taken the children under the circumstances in which they were taken. Didn't we decide that in the last case? I don't believe you did your Yes, but Mr. Ropeson certainly does not have qualified immunity. He's not a social worker. He's a police officer and Recy who was a social worker was acting far beyond the limitations that the court had placed for qualified immunity. But you make these claims on behalf of the stepfather? That's the stepfather, yes. Now, does he have standing to make these claims? I believe he has standing from the standpoint that he was in local parenthesis. He was a person who was taking care of these children, who was responsible for these children and had every obligation that the biological father had forfeited. He was the, obviously, the husband of the natural mother, Angela Bair. Is there any, you know, you wondered if the, if the case was not, if there wasn't, we didn't see merit to the case whether we have to adjudicate the standing issue for him, but I suppose we would because that's jurisdictional, you have to say, whether the biological father has standing. No, he's not the biological father. He's not, he's the stepfather. The stepfather. Right. Whether the stepfather has standing. Yes, but this situation is not just on the stepfather, it's including the complaint by the children as well as a natural mother. Well, can he bring the case on he has, by virtue of his marriage, taken full responsibility for the care, treatment, and raising of these children and is standing in place of a parent who has undergone nothing to ensure that the children are raised properly or that their well-being is taken care of. In fact, the natural father was the one who was abusing them. Now, what did the state court hold? I'm sorry, I didn't understand. Did the state court make a holding with respect to whether this was a violation of some law or not? The state court really made no holding as to violation of any laws because the state court didn't have much of a hearing. They just made a quick determination. What did they determine in that quick determination? They determined that the children were going to be held. Which had to go home. Pardon me? I'm sorry, I didn't understand. Can you say it again? Yeah. The state court basically held that the children were going to be kept by children and youth and placed in foster homes. Now, when they were placed in foster homes, then you're past the trial aspect of it. You get into a situation where the children were sent from back and forth between seven different foster homes, had their medications changed 21 times in 41 days. Well, I thought the state court determined on February 20th that the custody was justified, the taking of the children, as of January 10th. Isn't that what the state court held? That's correct. Okay, and aren't we bound under the Rooker-Feldman doctrine to follow or give credence to what the state court held? Only in regards to what the state court held, not what preceded the state court's action or what followed the state court action. And I think that's the important aspect in this case. But the ruling, a ruling always deals with what preceded the ruling. I mean, that's the point of a ruling. It may not deal with the future, but it deals with the past. Not unless they look at how the children were taken. The court did not look at how the children were taken. Well, maybe the court was wrong. Maybe it should have looked at more. But the children, in fact, were taken, and the judge said justify the result of it, didn't the judge? Well, I think that's where Rooker-Feldman disagrees with your interpretation of that, Your Honor. I think Rooker-Feldman says what preceded the state court determination, if it wasn't done constitutionally, it's a violation. We should decide the state court was wrong? No, the state court did what they did based upon the evidence that they had, but didn't discuss whether the taking was proper or not. But it came to a conclusion treating it as if it was proper because it said it was justified removal. And the due process claim would have to be that it wasn't justified from January 10th to February 20th. That's what you were saying before the February 20th, right? That's correct. And that is, and as Judge Greenberg said, that's one of the underlying bases of the state court decision, and we would have to undercut that, which we can't do under Rooker-Feldman. I don't believe you'd have to undercut that. What you're saying is the same thing as you're saying in a criminal action. The fact that a criminal is found guilty at trial does not mean that he was seized properly, he wasn't advised of his rights, etc. And that is left open to higher interpretation by an appellate court. And I think here you have a situation that is similar. You're going back, they're not taken properly. Number one, I would say that they never should have been held anyway because the family... But you don't agree with the state court holding. The question is, are we bound by it? No, I don't agree with the state court holding. Obviously. But the fact of the matter is, they just held what they saw right in front of them. But you're saying they didn't look far enough. That's correct. Yeah, but... That's why there's an appeal. Well, it happens all the time. Yes, that's what I'm saying in a criminal case. Judges don't look far enough and they get reversed. But it wasn't reversed by the state. But here you have a situation, just as you would have in a criminal case, if they did it improperly in a criminal case, it'd still be open to a 1983 action. And we're saying this is open to a 1983 action for the improper seizure. An improper search and seizure. Violation of the Fourth, violation of the Fourteenth Amendment, and violation of the First Amendment. This is a hard case to get your hands around. There's so many defendants. Well, I've cut out all the other defendants as far as that. I'm trying to concentrate back on strictly the people who were involved. Greasy, the Ropeson, and Sattball and Dry. Tell us, who were the defendants against whom you want this case reinstated? Just the names of those defendants. Greasy, Ropeson. That's all? That's it. And not the county? Well, I do want the county, yes. Oh, well, that's so bad. There's more than that. Wasn't the county a defendant in the first case? It is. Yes, it is. So you want the county and these other two individuals? That's correct. Other than that, you abandon the case? For the judges and so forth? Yeah. I didn't write this complaint. So it's a complaint that was written by the individual pro se, and as far as the judges and other people, I'm not interested in pursuing them, nor the attorneys and district attorney and so forth. I think we understand. Did you have any questions, Judge Rainey? The only question I had was what your specific request was on the procedural due process claim that you thought the district court had not ruled on. I feel that the court should determine that the children were seized improperly as a result of a protective order that was blank, that was... So you think that we can rule on that? Yes, because that's a 1983 violation. It was a blank one, it was signed by a police officer who was not in his jurisdiction, was not there to seize the children, was not even in the building. Okay. Thank you. Thank you. May it please the court, I represent... My name is Jerry Geiger and I represent the Monroe County defendants. And I have to say it's rare that I've been as surprised as I am at an oral argument, but I represent a large number of Monroe County defendants. This is the first time I'm hearing that the claims are limited to two, Giese and Monroe County. That's two and there's one other. Robson is represented by Mr. Coleman. I think we may have one extra lawyer in that one. Oh, yes. Well, he's allowed. It's okay. The problem with Mr. Loftus' claim is that it's really... I don't see how he can get to a Section 1983 action without this court finding that the state court did something wrong. Because the state court may not just put the children into or gave custody of the children to Monroe County Children and Youth. It did more than that. It found that reasonable efforts were made before the filing of the petition, that the custody was taken by Monroe County Children and Youth by agreement of the parties. You know, there's a record where Mrs. Bayer and the natural father, Gabriel Zaney, testified that, yes, we want you to take the children and we agree to no contact during the period of dependency. And yet the brief is filled with blaming us for violating constitutional rights because we didn't allow contact. If there's a theme in the case, it's that the Bayers have been unable to accept the ruling of the trial court. And as Judge Greenberg said, well, what if the trial court is wrong? Well, maybe the trial court was wrong, but the remedy was to file an appeal to superior court and get the judge reversed or ask the trial court to reconsider her order. The other issue, which I have not been clear on based on the brief, is what period of time are the plaintiffs really suing for? Mr. Loftus told the court this morning that he's looking for the, I'm assuming, and I don't want to mischaracterize it, but the time prior to the court issuing its order. Now the court issued its order, I believe, on January 14. So he's looking for the first order. He's looking for the time, I assume, between January 10, which was a Friday, and January 14. The problem is that the defendants that he sued, there's no basis for liability for that period of time. There's nothing in the record that Ms. Giese had anything to do with the pre-hearing seizure. There's also, if he's trying to raise a Monell claim against Monroe County, there's no evidence that the county had a policy that led to a deprivation. In fact, the Bayers took no depositions in this case. The only depositions that were taken were from the defense. There's just an inadequate record for any type of a claim, either pre-court order or after court order. The other thing is that this court, in its last decision, found that the people who did pursue the dependency, or had an interest in it, were Heather Dry and Sod Ball, and that they were entitled to qualified immunity. So if he's naming other individuals, such as Giese, if she had a role, and there's nothing in the record to say that, she would have the same qualified immunity that Dry and Ball did. And all this is being done on behalf of someone who wasn't a plaintiff in the prior suit, right? Mr. Bayer? Yeah, I'm not sure you even need to get to the issue of standing, because I don't see there's a claim even if Mr. Bayer had standing. I think the record is clear that Mr. Bayer had no financial obligation for these children. He had no right to influence. He had no right of visitation. You know, you raise an interesting point there. When I read this case, I thought, gee, if there's no case, and you didn't have standing, why do you have to rule on standing? Then it occurred to me, you always have to rule on standing, because if there's no standing, then the case is in res judicata, because he's not individually properly there. So he can't get stuck. It's like getting stuck with an order in a case in which you're not a party. So I didn't see how you could duck it. You could duck it. I understand what you're saying. I just question whether that could be done. Yeah, and I don't want to duck the issue. I was just trying to make your job a little easier. I wish everybody did that. Trying to do what, make it easier? Make your job easier by not having to rule on an extra issue that's maybe extraneous. But, you know, if it is important, Mr. Baer has no right of visitation. The Baers are now estranged from each other. Ah, they are. And, you know, it was the natural father who testified before Judge Worthington at the trial court, and Angela Baer, the mother, Mr. Baer was not allowed to participate in what happened at the trial court level. So, you know, he was theoretically, as far as the trial court was concerned, he had no rights in the children. And I believe that Pennsylvania law will show that, that as the new husband living in the house, that doesn't necessarily give you rights over the children of your former spouse without some legal right. If he were to file, if they were involved in a car accident, would he be allowed to sue on their behalf as a plaintiff, you know, as the natural, as the parent, or as the, he was not appointed as a guardian ad litem. The relief was not requested, either by, you know, in the trial court level or in federal court. So... Is Mrs. Baer, his estranged wife, is she part of this new action? She's part of this case.  Mrs. Baer, yeah, Angela Baer. Even though they're estranged. Yeah, that hasn't, I mean, this happened not that long ago. So, but the, Angela Baer has always been a plaintiff. So she certainly has standing. Oh, yes, definitely. Now, the natural father of the children has never expressed a desire to pursue a claim here and has not been the, not been a plaintiff. And, in fact, he had agreed to what the trial court did, and he was deposed by the defense. And, you know, he's taken the position that the dependency action was beneficial. You know, the Baers were fighting over, the children were making accusations of sexual misconduct against him, and then they would retract it, and, you know, Mrs. Baer would call up and say, no, never mind, they changed their mind, this never really happened, and then she'd call up again and say, oh, it really did, now you really have to investigate. The reason for the no contact order by the trial court was that the trial judge wanted the children to be set aside somewhere without the influence of two estranged spouses fighting over the children and possibly making false accusations. So, but I just, you know, in sum, I'm going to give some time to Mr. Coleman, but I don't see how you can rule in the Baers' favor without collaterally attacking the trial court's opinion. You mean the state court's opinion? I mean the state court's opinion, yes. Thank you. Good morning, may it please the court. My name is Harry Coleman, I represent Detective Robson in this particular matter. I would just like to address the issue that was raised by Attorney Loftus in terms of the jurisdiction of Detective Robson to do what he did. The allegations of the sexual improprieties against Mr. Zahaini allegedly occurred within his jurisdiction, which was Tobyhanna Township. He was asked to come to the children youth services, by children youth services, to interview, to be part of the interview of the young children. He clearly was involved. Later, when the children, I think it was on January 10th, when he asked the Stroud Area Regional, which has primary jurisdiction in Monroe County, in the area of Stroudsburg, he asked them to come and they came for the visit with children youth, with Detective Robson, and there was a bomb scare. Apparently there was an agreement between Stroud Area and Detective Robson that he would handle it and go forward. I don't believe that there's any competent argument that he lacked jurisdiction to do what he did. We can't decide facts. I mean, you're really raising an issue. Aren't you of facts before us? The facts which comprise the jurisdiction of Detective Robson, I think are critically important to an understanding of the record. The second argument that Mr. Loftus makes is that Detective Robson signed a blank order. There's no evidence of that. Other than an affidavit, the only evidence in the record, as my colleague on the defense noted, there was no discovery done by plaintiff, written or deposition. There's no evidence in the record to support that argument before this court, or was there any evidence before the district court to even make that argument? You mean no evidence that he signed a blank order? He signed the notice of placement, and Mrs. Bayer, Angela Bayer, has stated in her counter-affidavit in regard to the summary judgment, the only time she spoke in the entire matter was that, other than her deposition, excuse me, the only time she spoke on the point, is she said that Detective Robson signed a blank order. I don't understand that. Is it like an order of the court? Can a detective sign a court order? No, it's a notice of placement that she's referring to. So it's a misnomer, you're saying? Absolutely. Detective Robson, and I think this segues into the Rooker-Feldman, Detective Robson, in my opinion, was part of the first link in the chain that ultimately went through the family court of Monroe County. He was asked by children and youth, based upon these allegations, to come. So I believe that the Rooker-Feldman doctrine, which the appellant's counsel agreed that what the state court held relative to the placement was justified as of January 10, 2003, that's Detective Robson. And his involvement here ends on that date. So I don't know where the arguments really gain steam against Detective Robson. I believe the district court was entirely correct in ruling on the summary judgment motion as that record existed before Judge Caputo. Thank you very much. You're welcome. My pleasure. Do you have a question? I don't have any questions. Okay, thank you. Did Mr. Loftus reserve time? Three minutes. Okay, we'll hear from you. Thank you. Are you appealing all of the district court's dispositive motions? Or orders, I should say. Not all of them. No, because a lot of them referred to people like the district attorney and Mr. Cohen, who was their attorney at that time. So a lot of them are not being appealed, but they were included in the record for the purpose of clarifying exactly where we're coming from. I disagree enormously with what has been said by the two attorneys. An awful lot of the information that was just given, and a prime example is that they're now estranged, is totally out of the record and is not contained in the record. There is disagreement with whether or not Mrs. Baer agreed to not have any contact. And that's in the brief. And it refers to affidavits by not only Mrs. Baer, but also by Mr. Baer. They have not presented anything to show that that was agreed upon. But we are not fighting the no contact order. What we are saying is that you have a situation that they had a right to know where the children were placed in foster care by state law, which was not given to the Baers. Neither Mrs. Baer, the biological mother, or the stepfather, Bruce Baer. That was a violation under the First Amendment. In addition, we're not looking for time between, and we did not even bring up an argument, of the time differential between the taking on 110 and the initial hearing authorizing the holding on 114. That was determined by this court back in the last case. We have no argument with that. What we're saying is what happened before that, what happened going into 110. Now, Mr. Corman has said that there is nothing in the record to demonstrate that Mr. Ropeson filed a blank order. I call your attention again to our brief. The complaint in this matter have an attachment, exhibit number one. And there are two other exhibits, which are listed in the brief, showing that it was a blank. He wasn't even there. And he has to be... What does that mean, a blank? I mean, you could take a sheet of paper... He just signed a sheet of paper, basically. Well, what was on the paper where he signed it? Nothing. There was nothing on the paper saying why the taking was necessary or any of the other responsibilities required by the law. What did it say? It said nothing. Well, it was... I mean, I could write my name on a sheet like that. Well, I'd put a check on that. Yeah, so I could write my name, and here it is. And now there's a blank piece. It couldn't have just been... Up at the top, it just said protection order. Well, did it give the name of the children? No, it was blank. It wasn't a notice of placement, like we were just... No, it was not a notice of placement. The court has to make a determination whether there's placement. The court did not authorize any order to be given. The court did not authorize police to go out and arrest these kids or catch these kids and take them. And what did we decide in our first opinion? Only that Dry and Ball had qualified immunity. This was a police officer who was acting. And what did the state court determine? The state court determined that the custody was justified as of January 10th. Isn't that right? That's correct. Okay. But it was justified, not as to the Bears, but as to Mr. Zaney. And what the court did in the last hearing, they did not go and look at the legality of taking the children in the first place. All they did was go from 114 on and say the holding is justified. Thank you. Your red light is on. You're welcome. Thank you very much. We'll take the matter under advisement.